## YATES, RESPONDENT, *v.* COMMERCIAL BANK & TRUST CO. ET AL., APPELLANTS.

(No. 6,102.)

(Submitted March 22, 1927. Decided April 9, 1927.)

[255 Pac. 8.]

*Conversion—Husband and Wife—Fraudulent Transfer of Personal Property—Title—Bona Fides of Transaction for Jury.*

Conversion—Fraudulent Conveyance by Husband to Wife—Evidence—Sufficiency.

1. In an action in conversion of personal property seized under attachment, in which defendants alleged that the property seized belonged to plaintiff's husband, that she and he had conspired to defraud his creditors and for that purpose the husband had fraudulently transferred his property to plaintiff who paid no consideration therefor, and that other property had been purchased by her with the husband's money, *held* that the verdict in plaintiff's favor was supported by the evidence.

Same—Husband and Wife in Joint Occupancy of Ranch Home—Question of Title to Personal Property One for Jury's Consideration.

2. Where husband and wife are in the joint occupancy of a ranch home it is inevitable that each will exercise more or less dominion over the personal property on the place, such as livestock, etc., of which, irrespective of who of the two is its owner, the family has the beneficial use; so where the question of title is presented, as in an action by the wife for the conversion of chattels claimed by her as her own but asserted by defendants to have been in the exclusive possession of the husband, the question is one of fact for the jury's determination.

Same—Transfer of Personal Property by Husband to Wife—Bona Fides of Transaction for Jury.

3. The fact that at the time defendant bank was insisting that plaintiff's husband furnish additional security for the payment of his indebtedness, the former executed a chattel mortgage on livestock, claimed by her as her separate property and seized by defendants under attachment, to one from whom she received no consideration therefor, a circumstance bearing a suspicious aspect, was one addressed to the jury in determining whether her claim of ownership by transfer from husband to wife was fraudulent as claimed by defendants or not.

[1] Fraudulent Conveyances, 27 C. J., sec. 775, p. 828, n. 12; sec. 779, p. 834, n. 54.
[2]. Trover and Conversion, 38 Cyc., p. 2105, n. 35.
[3] Fraudulent Conveyances, 27 C. J., sec. 787, p. 840, n. 10.

3. See 12 R. C. L. 670.

*Appeal from District Court, Sweet Grass County; H. J. Miller, Judge.*

ACTION by Florence H. Yates against the Commercial Bank & Trust Company of Big Timber and Ed. Brannin, as Sheriff of Sweet Grass County. Judgment for plaintiff and defendants appeal. Affirmed.

*Messrs. Davis & Kelly* and *Messrs. Johnston, Coleman & Johnston,* for Appellants, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

There is no evidence to show that any of the property involved herein was purchased with any of the funds or moneys belonging to respondent wife. Her husband being insolvent when all these purchases were made, and the property being purchased in respondent's name, the burden of proof was on respondent to show that the money used in purchasing same was her money and not her husband's. The presumption is that this money belonged to her husband. (*Chan* v. *Slater,* 33 Mont. 159, 82 Pac. 657; *Seitz* v. *Mitchel,* 94 U. S. 580, 24 L. Ed. 179 [see, also, Rose's U. S. Notes]; *Jack* v. *Kintz,* 177 Pa. 571, 35 Atl. 867; 12 R. C. L. 524.)

On account of the confidential relation between husband and wife, and of the great frequency with which husbands place their property in their wife's name for the purpose of defrauding creditors, it is the general rule of law that where the husband is heavily encumbered and property is purchased in his wife's name, such matters are subject to the most rigid scrutiny. (*Harrison* v. *Riddell,* 64 Mont. 466, 210 Pac. 460; *Shepherd* v. *First National Bank,* 16 Mont. 28, 40 Pac. 67; *Koopman* v. *Mansolf,* 51 Mont. 54, 149 Pac. 491; *Hale* v. *Belgrade Co., Ltd.,* 75 Mont. 99, 242 Pac. 425; *Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618; *Hart-Parr Co.* v. *Schafer,* 73 Mont. 429, 236 Pac. 675; *Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063.)

Where the husband is insolvent and the purchase price is paid by him the conveyance to his wife is fraudulent and void as to his creditors. (12 R. C. L. 524; 20 Cyc. 396; *Wolfsberger* v. *Mort,* 104 Mo. App. 257, 78 S. W. 817; *Reel* v. *Livingston,* 34 Fla. 377, 43 Am. St. Rep. 202, 16 South. 284; *Glidden Murphin & Co.* v. *Taylor,* 16 Ohio St. 509, 91 Am. Dec. 98, 100; *Gordon* v. *Goodwin,* 2 Nott & McCord (S. C.), 70, 10 Am. Dec. 573; *Stix* v. *Chaytor,* 55 Ark. 116, 17 S. W. 707; *McKey* v. *Cochran,* 262 Ill. 376, 104 N. E. 693; *Laird* v. *Davidson,* 124 Ind. 412, 25 N. E. 7; *Phillips* v. *Rhodes,* 2 Colo. App. 70, 29 Pac. 1011; *Conger* v. *Corey,* 39 App. Div. 241, 57 N. Y. Supp. 236; *Markham* v. *Whitehurst,* 109 N. C. 307, 13 S. E. 904; *Watt* v. *Morrow,* 19 S. D. 317, 103 N. W. 45.)

A bill of sale taken in the wife's name is not any evidence of her ownership where the husband is insolvent and pays the purchase price. (*Gordon* v. *Goodwin,* supra.) Where money is deposited in a bank in the wife's name, but in fact belongs to the husband, property purchased with it belongs to the husband. (*Beatty* v. *Thompson's Admr.,* 23 Ky. Law Rep. 1850, 66 S. W. 384; *Wolfsberger* v. *Mort,* supra.)

A husband cannot keep his property from his creditors by any mere pretense that the same is the property of his wife, and that he is merely acting as her agent. (*Blum* v. *Ross,* 116 Pa. 163, 10 Atl. 32; *Hamil* v. *Augustine,* 81 Iowa, 302, 46 N. W. 1113; *East St. Louis Ice & Cold Storage Co.* v. *Kuhlmann,* 238 Mo. 685, 142 S. W. 253; *Edelmuth* v. *Wybrant,* 21 Ky. Law Rep. 929, 53 S. W. 528; *Murphy* v. *Nilles,* 166 Ill. 99, 46 N. E. 772; *Patton's Exr.* v. *Smith,* 130 Ky. 819, 23 L. R. A. (n. s.) 1124, 114 S. W. 315; *Marcy* v. *French,* 108 Misc. Rep. 302, 177 N. Y. Supp. 602; *Patterson* v. *Gilliland,* 203 Ala. 303, 82 South. 493, 13 R. C. L. 1161.)

If any part of the money deposited in the Scandinavian bank was the money of respondent, by permitting same to be indistinguishably mixed with the moneys of her husband deposited

in such bank it is liable for the debts of her husband.   (*Kimble v. Wotring,* 48 W. Va. 412, 37 S. E. 606.)

When the husband and wife live together, the presumption is that her services are performed in the relation of wife, and that the business is that of the husband.  (*Joseph Schlitz Brewing Co.* v. *Ester,* 86 Hun, 22, 33 N. Y. Supp. 143.)

*Messrs. Gibson & Smith,* for Respondent, submitted a brief; *Mr. Fred L. Gibson* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff, Florence H. Yates, brought this action against the defendants Commercial Bank & Trust Company, hereafter referred to as the bank, and Ed. Brannin, sheriff of Sweet Grass county, to recover damages for the conversion by the defendants of sheep, cattle, pigs and other personal property of which the plaintiff says she was the owner and in possession on May 21, 1925, the date of the alleged conversion. The defendants admit taking the property but deny it was the property of the plaintiff or that she was lawfully possessed of the same or entitled to its possession, and they allege that in the year 1923, or at some time prior thereto, plaintiff and her husband conspired to defraud the defendant bank and the other creditors of the husband; that pursuant to the conspiracy the husband pretended to transfer to plaintiff a greater portion of his personal property; that no consideration was paid therefor by the plaintiff; that the alleged transfer was not accompanied by an immediate delivery and was not followed by an actual or continued change of possession of the property transferred. They further allege that thereafter other personal property was purchased and taken in the name of the plaintiff but was paid for out of proceeds derived from the farming and livestock operations of plaintiff's husband. They also allege that the property taken was the property of the husband. These allegations were denied by reply.

The jury found a verdict for the plaintiff, upon which judgment in her favor was entered. The appeal is from this judgment, after defendants' motion for new trial was denied.

In 1917, at the age of eighteen years, the plaintiff married [1] and went to live with her husband upon a dry land farm near Gibson. In the next seven years she bore five children. The farm consisted of 160 acres owned by Mr. Yates, of which 85 or 90 were in cultivation, and two other tracts which he possessed under contracts of purchase, one from the Northern Pacific Railway Company, and the other from the state. Some of the Northern Pacific land was under cultivation.

In 1920 Yates owed the bank $4,800, evidenced by a promissory note. From time to time thereafter the bank took from him new notes, including accrued interest. In August, 1922, Yates gave a statement to the bank in which he said he owned, among other things, 480 acres of land, ten horses, thirteen cattle, 100 hogs and four sheep. None of this property was transferred to the wife, nor is any of it involved in this lawsuit so far as the record discloses.

In December, 1923, Yates' note amounted to $6,104.66, and as security the bank had a chattel mortgage on the stock and personal property which Yates had upon the ranch, and also had assignments of his real estate contracts. The chattel mortgage did not cover any of the property involved in this suit.

In 1918 a neighbor gave plaintiff two motherless lambs, a ewe and a buck, which she raised. The next year the ewe produced a lamb and the neighbors gave plaintiff several more. In 1920 she purchased two cows from Mr. Mo, for $275, and paid him the money. He gave her a bill of sale. In 1922 she traded one of these cows for sheep. She sold most of the wether lambs. In the winter of 1922 she bought fifty sheep from Andrew Thompson. In payment she gave him a note for $150 secured by chattel mortgage upon the sheep purchased. This note she paid in the year following from proceeds of wool sold by her. The note was produced in evidence. In

1923 for the first time she made a return to the assessor, in which she stated her ownership of sixty-three head of sheep.

On December 1, 1923, she opened an account with the Scandinavian Bank of Big Timber. This she did by giving to that bank her note for $50, and depositing the amount. She borrowed additional amounts from time to time, deposited the sums borrowed, and made other deposits. She checked upon the account herself and permitted her husband to check in her name. Most of the checks were for provisions and clothing for the family. Some were for sheep purchased.

Plaintiff testified she milked the cows herself, sold cream and made butter which she sold. She also raised turkeys and chickens, from which she obtained small sums of money. She obtained some pigs and cared for their increase. Her principal sources of income were from the sale of wool, sheep, pigs, cream, butter and poultry, but she received small amounts of money from her father, aggregating about $100 over a period of two or three years, and also about $225 from a great-uncle. Most of the money she received from her great-uncle she placed in the bank.

In 1924 she bought forty-five sheep from Oscar Rostad, and fifty-two from Swen Thompson. She also purchased two bucks from J. L. Rapstad. These were paid for by checks issued in her name by Mr. Yates. In the summers of 1923 and 1924 the sheep were kept upon the ranch most of the time but were herded part of the time along the road and upon adjacent land. Plaintiff said: "I stayed with them most of the time, the children and I together. I hired a little boy to herd them part of the time." She rented some pasture land some miles away from her home and the sheep were herded there. Her husband's time was taken up with his farming operations.

It is true that the livestock in question were cared for upon the ranch and were fed from the products of the ranch. Undoubtedly the husband joined with the wife in caring for a portion of the livestock. Counsel for defendants insist that many indicia of fraud were shown. They assert that the purchases were made entirely by the husband and in such a

way that the wife was practically unknown in the transaction, but this the record does not sustain. For instance, with respect to the purchases of sheep from one Magelssen, the plaintiff testified that she had spoken to Magelssen about the sheep before the purchase was made. She gave her husband the money to pay for the sheep and he told Magelssen his wife was buying them and requested a bill of sale in her name. When the sheep were purchased from Rostad plaintiff and her husband were present and both walked out to see them. Mr. Yates examined the mouths of the sheep. Plaintiff was present when the deal was closed. Upon an occasion when two bucks were purchased Mr. and Mrs. Yates were sitting in an automobile, Mrs. Yates holding a baby. It was not convenient for her to write the check so her husband wrote it.

Plaintiff purchased a second-hand automobile, which was used for family purposes, this being operated frequently by the husband.

The court gave numerous instructions in which the jury was told, without objection, that all of the property owned by a wife, before her marriage, and that acquired by her afterwards, is her separate property, and in no case shall any of the separate property of the wife be liable for the debts of the husband unless such property is in the sole and exclusive possession of the husband, and then only to such persons as have dealt with the husband in good faith and on the credit of such property without knowledge or notice that the property belonged to the wife. That the earnings and accumulations of the wife are not liable for the debts of the husband. That either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property which either might enter into if unmarried. That while the laws of Montana permit a husband and wife to deal with each other in business transactions, such dealings are always subject to close scrutiny, especially when one of them is insolvent; an insolvent debtor may not use his wife's name as a mere device to cover up and keep from his creditors the assets and proceeds of any business or farming operations

which in truth is his own. That if the jury found from the evidence that any of the property in question was in the sole and exclusive possession of the husband, and that the defendant bank dealt with him in good faith on the credit of such property without knowledge or notice that it belonged to plaintiff, its verdict should be for the defendants. That if the jury found from the evidence that the husband, while insolvent, transferred any of the property in question to his wife, for which she paid nothing, or for which she paid a consideration that was grossly inadequate, or which she accepted with the intent to delay or defraud any creditor of her husband, then as against the rights of the defendant bank such transfer was entirely void, and as to such property the jury should return a verdict for the defendants. That before plaintiff could recover in this action for any of the property described in her complaint she must prove by a preponderance of the evidence that she was the owner of such property.

Other instructions were given, including those which defendants claim were prejudicial. The points made as to these have so little merit that we shall not consume time in discussing them. Taken as a whole the defendants certainly have no cause to complain against the instructions.

The husband must support himself and wife out of his property or his labor. If he is unable to do so she must assist him as far as she is able. (Sec. 5784, Rev. Codes 1921.) Neither the husband nor wife has any interest in the property of the other, except as mentioned in the preceding section, and neither can be excluded from the other's dwelling. (Id., sec. 5785.) Neither husband nor wife, as such, is answerable for the acts of the other, or liable for the debts contracted by the other; provided, however, that the expenses for necessaries of the family and of the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately. (Id., sec. 5790.) The earnings and accumulations of the wife are not liable for the debts of the husband. (Id., sec. 5795.)

The law makes provision for the filing of an inventory of the separate personal property of the wife (Id., sec. 5793), and also makes provision as to how far the property of the wife shall be exempt from her husband's debts and liabilities (Id., sec. 5799), which last section provides in part: "And in no case shall any of the separate property of the wife be liable for the debts of the husband, unless such property is in the sole and exclusive possession of the husband, and then only to such persons as deal with the husband in good faith on the credit of such property, without knowledge or notice that the property belongs to the wife."

The bank failed to prove that the wife obtained from her husband any of the property which was taken from her by the defendants, or that she obtained from her husband any of the money with which any of the property was purchased. This case is widely different from *Gates* v. *Powell,* 77 Mont. 554, 252 Pac. 377.

The statement of plaintiff's counsel that substantially all of the property which was taken by the sheriff at the bank's instance was acquired after the indebtedness of her husband to the bank had been incurred, is supported by the testimony.

A further discussion of the evidence would prove a profitless task. It is enough to say that after a comparison of all the testimony we are unable to say that the verdict cannot be sustained.

There were circumstances connected with the transactions of the husband and wife from which the jury might have found that the purpose of the plaintiff in doing as she did was designed to obstruct the bank in the collection of the husband's debt, but the jury did not so find. The jury did not believe that she obtained this livestock or other personal property pursuant to any conspiracy which she had entered into with her husband fraudulently to defeat the creditors of her husband; it concluded rather that with five small children upon her hands, she was doing her utmost in carrying the family burdens in order to escape the poverty which would stare them in the face if she were compelled to rely solely

upon her husband in his apparently hopeless financial condition.    Upon this element of the case was not the jury justified?

The husband, after attempting to make a living for himself and family upon a dry land farm for years, had reached the end of his tether.    The wife through the acquisition of a few sheep, cows, pigs, turkeys and chickens, and the exertion of her own labor, strove to assist in providing for her family the necessities of life.    The story disclosed by this record is but another chapter in "the short and simple annals of the poor."

The record does not sustain the contention of the defend-
[2]    ants that plaintiff's husband had the sole and exclusive possession of the personal property in question.    Plaintiff and her husband were in the joint occupancy of the home ranch and as said by the supreme court of Minnesota in *Kroll* v. *Morits,* 112 Minn. 270, 127 N. W. 1120: "Where a husband and wife are living together and maintaining a joint home, it is inevitable that each will exercise more or less dominion over the property of which, irrespective of absolute title, the family has the beneficial use.    So that when the question of title is presented it is one of fact, which a jury is peculiarly well fitted to pass upon."

The jury concluded that the plaintiff had proven by a preponderance of the evidence that the property seized by the sheriff at the instance of the bank was her own property.    That finding must stand.

The defendants showed that in the fall of 1925, at a time
[3]    when the bank was insisting that the husband give additional security for the payment of his obligations, she executed a chattel mortgage covering a large part of the property in question here to a man by the name of Rhodin to secure the sum of $2,000.    She did not receive any money from Rhodin and her explanation why she executed the chattel mortgage bears a suspicious aspect.    The purpose and intent of plaintiff with respect to this matter were also peculiarly within the province of the jury.

After a comparison of all the evidence in the case it may safely be said that a verdict for either plaintiff or the defendants would not be disturbed upon appeal. In effect the jury found that the defendants had failed to prove: That a conspiracy existed between husband and wife to defraud the husband's creditors; that the property in litigation was the property of the husband, and not of the wife; that the husband had transferred the property or any thereof to the wife, or that he had furnished her money to purchase the same; that the property was in the sole and exclusive possession of the husband; that the defendant bank dealt with the husband on the credit of such property. The trial judge confirmed the jury's verdict. We see no compelling reason to disturb it.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

Rehearing denied April 26, 1927.